UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WARREN R. JOHNSON,

    *Plaintiff*,

v.

UNITED STATES FEDERAL GOVERN-
MENT, et al.,

    *Defendants*.

Civil Action No. 23-3924 (TJK)

## MEMORANDUM OPINION

Warren R. Johnson sues the United States, the Administrator of the Environmental Protection Agency, and two other agency officials alleging, among other things, that his former employer miscalculated his retirement benefits and discriminated against him in violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967. Defendants move to dismiss, arguing that the Court lacks subject-matter jurisdiction over some of Johnson's claims, and that he failed to exhaust his administrative remedies on the others. The Court agrees, so it will grant the motion and dismiss the case.

**I.   Background**

Johnson, who is black, alleges that he began a promising career in federal service around 1974. Amended Complaint ("Am. Compl.") at 24, ECF No. 26. "[T]he first 20 years," he says, were "glorious": Johnson allegedly became "the first minority/African American to ever hold an elite/strategic position" within the Environmental Protection Agency ("EPA") and rose "to a GS-13, Step 4 level on [his] own." *Id.* But some "Caucasian" EPA employees allegedly began "downplay[ing]" and "undermin[ing]" his accomplishments, "throw[ing] roadblocks" wherever they could. *Id.* In 1994, he brought a "Civil Rights case" against the EPA administrator, *id.* at 5, which

the parties settled roughly a year later, *see Johnson v. Browner*, No. 94-cv-2743 (D.D.C. Feb. 2, 1996), ECF No. 15. Under the settlement agreement, the EPA had to pay Johnson $30,000 and "retroactively promote" him "from GS 13, Step 4 to GS 14, Step 1" for the 1992–1993 period and to "GS 14, Step 2" for the 1993–1994 period, "the date of [his] disability retirement." *Id.* ¶ 1. The settlement represented a "full and complete satisfaction" of Johnson's "discrimination and retaliation" claims, and the parties agreed to dismiss the case with prejudice. *Id.* ¶¶ 3, 5.

Though that case settled, Johnson's issues with EPA apparently did not. The agency allegedly "lied" about "returning" him to a position worthy of his education and training and instead "sent [him] back to the same EPA division" and into "the same hostile work environment." Am. Compl. at 19–22. In that position, he received "no accommodations," "suffered permanent health setbacks," and went "through the worst disparate treatment ever." *Id.* at 15, 19–20. Johnson says that EPA "trashed [his] re-employment rights," "denied" him promotions and on-the-job training, and "downgraded [him] to a measly GS-9, Step 10 type of position." *Id.* at 20–21. And in November 2021, when EPA "let [him] go after less than approximately 60 days" using a sham "process," the agency "gave [him] half-measured retirement benefits"—"a mere disability retirement"—instead of "a full retirement." *Id.* at 15, 21, 26. Johnson also discovered that EPA had allegedly "miscalculated/underpaid" his Worker's Compensation benefits and that he had been "unnecessarily paying premium/top of the line for a healthcare insurance." *Id.* at 15–16, 20. On his account, "EPA did not do a thing to update [him] on the variety of plans that could better fit/benefit [his] needs" as part "of the Worker's Compensation program during all of the 28+ years' worth of open seasons." *Id.* at 16; *see id.* at 20.

In November 2023, Johnson moved unsuccessfully to "reopen" his old case. *See Johnson v. Browner*, No. 94-cv-2743, ECF No. 16. A month later, he sued the United States, EPA, and what appeared to be four EPA employees for violating Title VII of the Civil Rights Act of 1964,

42 U.S.C. §§ 2000e et seq., the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–34 ("ADEA"), and unspecified "other" federal laws. ECF No. 1. The United States moved to dismiss for insufficient service of process, but the Court gave Johnson leave to properly effectuate service. ECF No. 19. Johnson then amended his complaint, naming as defendants "the United States/EPA," the EPA's Administrator, and the Director and Deputy Director of the Office of Administration. Am. Compl. at 2–3. As best the Court can tell, Johnson brings a host of employment-discrimination claims under Title VII and the ADEA ranging from failure to hire, failure to promote, failure to accommodate his disability, wrongful termination, and retaliation, to disparate treatment and hostile work environment. *Id.* at 10, 22. He also appears to bring a claim for miscalculation of retirement benefits, *id.* at 15, 24, 26; ECF No. 34 at 20, and in later filings alleges there are "negligence components" to his suit too. ECF No. 37 at 2; *see also* ECF No. 34 at 27; ECF No. 37 at 2. Among other things, Johnson asks for $300,000 in "underpaid money damages," $500,000 in punitive damages, retroactive promotions, reinstatement, and restoration of sick and annual leave. Am. Compl. at 18–19; ECF No. 34 at 21–22.

Defendants now move to dismiss for lack of subject-matter jurisdiction and failure to state a claim. ECF No. 30.

**II.   Legal Standards**

On a motion to dismiss under Rule 12(b)(1), the plaintiff "bears the burden of establishing jurisdiction by a preponderance of the evidence." *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 91–92 (D.D.C. 2020) (citation omitted). The Court "assume[s] the truth of all material factual allegations in the complaint and 'construe[s] the complaint liberally, granting plaintiff the benefit of all inferences'" that it can "derive[] from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (citation omitted). Although pro se plaintiffs like Johnson are generally held to a "less stringent standard," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the "factual

3

allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal quotation marks and citation omitted).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim upon which relief can be granted." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 552 (2007). A plaintiff states a facially plausible claim when he pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts as true "all well-pleaded factual allegations" and "construes reasonable inferences from those allegations in the plaintiff's favor." *Sissel v. HHS*, 760 F.3d 1, 4 (D.C. Cir. 2014). But "mere conclusory statements" are not enough to establish a plausible claim, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Moreover, because Johnson is pro se, the Court considers not only the facts in his complaint, but also those alleged in his opposition to Defendants' motion to dismiss. *See Watson v. D.C. Water & Sewer Auth.*, 249 F. Supp. 3d 462, 464 (D.D.C. 2017).

### III.   Analysis

The Court will dismiss Johnson's claims for the reasons Defendants assert. The Court lacks subject-matter jurisdiction over his claims for disability benefits and any that assert Defendants were negligent. And his employment-discrimination claims under Title VII and the ADEA are either barred by his settlement agreement or unexhausted.

First, the Court cannot review Johnson's disability retirement benefits, which he claims EPA miscalculated, because it lacks jurisdiction over them. The Civil Service Retirement Act, which "specifies the benefits to which federal employees . . . are entitled," provides "a reticulated remedial regime for beneficiaries to secure review—including judicial review—of benefits

determinations." *Fornaro v. James*, 416 F.3d 63, 66 (D.C. Cir. 2005); *see* 5 U.S.C. §§ 8331 et seq. The Office of Personnel Management ("OPM"), which administers that system, "adjudicate[s] all claims," 5 U.S.C. § 8347(b), and any adverse decisions must first be appealed to the Merit Systems Protection Board ("MSPB"), *id.* § 8347(d)(1). From there, a claimant can seek judicial review, but—except in narrow circumstances inapplicable here—he "must do so before the Court of Appeals for the Federal Circuit." *Fornaro*, 416 F.3d at 64 (citing 5 U.S.C. § 7703(b)(1)). "[T]hese remedial provisions are exclusive." *Id.* at 66; *see Lindahl v. OPM*, 470 U.S. 768, 798–99 (1985) (concluding that "MSPB decisions concerning retirement disability claims are reviewable in the first instance by the Federal Circuit"). Thus, although Johnson says he took his miscalculation grievance up with OPM, ECF No. 37 at 2, he cannot now "challenge how OPM calculate[d]" his benefits in this court. *Fornaro*, 416 F.3d at 68. Congress chose to "channel[] review" of these determinations to the MSPB and the Federal Circuit, so this Court lacks jurisdiction over this claim. *Id.*

Johnson's "negligence" claim also runs into a jurisdictional wall. Absent a waiver, sovereign immunity bars suits against the United States, its agencies, and its employees sued in their official capacities—the entities Johnson sues here. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *Governor of Ga. v. Madrazo*, 26 U.S. 110, 123–24 (1828).[1] And while the Federal Tort Claims Act ("FTCA") waives the United States' immunity as to certain claims for money damages, including negligence, 28 U.S.C. §§ 1346(b), 2671–80, that waiver kicks in only if "the plaintiff has

---

[1] Even liberally construed, nothing in Johnson's complaint or pleadings suggests that he sues the EPA Administrator or the Director and Deputy Director of the Office of Administration in their individual capacities. *See Gebretsadike v. District of Columbia*, No. 23-cv-3198 (RCL), 2024 WL 3291744, at *4 (D.D.C. July 3, 2024) ("When the plaintiff does not formally name a defendant in their individual capacity, that indicates that the plaintiff has pleaded an official capacity rather than an individual capacity claim.").

exhausted administrative remedies by 'first present[ing] the claim to the appropriate Federal agency' and obtaining a final written decision or waiting six months after presentment." *Emrit v. NIH*, 157 F. Supp. 3d 52, 54–55 (D.D.C. 2016) (quoting 28 U.S.C. § 2675(a)). Exhaustion under the FTCA is a "jurisdictional" requirement, *Simpkins v. District of Columbia Gov't*, 108 F.3d 366, 371 (D.C. Cir. 1997), so Johnson "has the burden to plead" it, *Doak v. Johnson*, 19 F. Supp. 3d 259, 268 (D.D.C. 2014), *aff'd*, 798 F.3d 1096 (D.C. Cir. 2015); *see Greenhill v. Spellings*, 482 F.3d 569, 573 (D.C. Cir. 2007) ("Jurisdiction is determined by looking to the complaint."). He hasn't. Indeed, and as explained in more detail below, Johnson appears to believe that administrative exhaustion requirements do not apply to any of his claims. *See* ECF No. 34 at 25 ("Because America is a free country, I could choose to opt out/go directly to the federal courthouse for relief."). Thus, the Court will dismiss Johnson's claims for miscalculation of retirement benefits and negligence for lack of subject-matter jurisdiction.[2]

That leaves Johnson's employment-discrimination claims under Title VII and the ADEA. To begin, the operative complaint is unclear on whether Johnson attempts to reassert any discrimination claims he already settled. In it, Johnson requests "a total review" of his case "from 1994," Am. Compl. at 18, but he later clarified that he "do[es] not seek to reopen" that case after all, which is "used" only "as reference materials/displays" showing "how we got here," ECF No. 34 at 17, 21; *see id.* at 25 ("I agree there is no argument about the 'old closed case.'"). To the extent Johnson ever sought to bring such claims, then, the Court will dismiss them as abandoned. *Johnson v.*

---

[2] To the extent Johnson's claim for miscalculation of disability benefits is a claim for breach of his settlement agreement, the Court could not hear it either, because the Tucker Act vests exclusive jurisdiction in the Court of Federal Claims for contract claims against the United States when more than $10,000 is at stake. *See* 28 U.S.C. § 1491(a)(1); *Greenhill v. Spellings*, 482 F.3d 569, 572 (D.C. Cir. 2007). And Johnson contends that he missed out on "28+ years" of benefits totaling "$300k," thereby implicating the Tucker Act's jurisdictional bar. Am. Compl. at 17–18.

6

*District of Columbia*, 725 F. Supp. 3d 62, 67 (D.D.C. 2024) (quoting *Fleming v. Medicare Freedom of Info. Grp.*, No. 15-cv-1135, 2019 WL 6330719, at *2 (D.D.C. Oct. 24, 2019)). Of course, he could not reassert these claims anyway. Under the settlement agreement, Johnson "waive[d], release[d] and abandon[ed] any and all claims against" the EPA and "its officers, agents or employees . . . alleged" in the "litigation . . . as well as any and all other claims arising out of the events and/or subject matter involved." *Johnson v. Browner*, No. 94-cv-2743 (D.D.C. Feb. 2, 1996), ECF No. 15 ¶ 3. And by "execut[ing]" the agreement, the parties agreed to "dismiss[]" the case "with prejudice." *Id.* ¶ 5. So any claims Johnson could have raised back then are barred. *See Moore v. U.S. Dep't of State*, 351 F. Supp. 3d 76, 88 (D.D.C. 2019).[3]

To the extent that Johnson's hodgepodge of Title VII and ADEA claims relate to later events, Defendants correctly argue they must be dismissed for a different reason. Whether he contends Defendants created a hostile work environment, wrongfully terminated him, or anything in between, he "must exhaust administrative remedies" before he can bring such claims under either statute. *Bain v. Off. of Att'y Gen.*, 648 F. Supp. 3d 19, 44 (D.D.C. 2022). These exhaustion requirements give federal agencies a chance "to handle matters internally whenever possible" and "to right any wrong that [they] might have done." *Niskey v. Kelly*, 859 F.3d 1, 7 (D.C. Cir. 2017) (citation omitted). They also "ensure that the federal courts are burdened only when reasonably

---

[3] Johnson also alleges without further detail that he signed the agreement "under duress." Am. Compl. at 18. But for the reasons explained above, he has abandoned any claim directed at the settlement agreement, which in any event the Court would likely lack subject-matter jurisdiction to hear because it must be brought in the Court of Federal Claims under the Tucker Act. On top of that, he pleads no facts to support such an attack on the agreement's validity. To do so, Johnson would have had to plausibly allege that his "manifestation of assent [wa]s induced by an improper threat by the other party that l[eft]" him "no reasonable alternative." Restatement (Second) of Contracts § 175(1); *Harrison v. IRS*, No. 20-cv-828 (CRC), 2021 WL 930266, at *7 (D.D.C. Mar. 11, 2021) (explaining that courts "appl[y] Second Restatement of Contracts when considering duress claims for contracts" between a private party and the federal government, which are "analyzed under federal common law"). His conclusory statement comes up well short.

necessary." *Brown v. Marsh*, 77 F.2d 8, 14 (D.C. Cir. 1985).[4] Exhaustion under Title VII and the ADEA is "non-jurisdictional," so a plaintiff need not plead it. *Bain*, 648 F. Supp. 3d at 46 (citing *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997)). Instead, the agency must plead and prove it as an affirmative defense. *Id.* At the motion-to-dismiss stage, the agency may raise that defense only if the plaintiff's failure to exhaust is "clear from the face of the complaint." *Id.* Put another way, the "the complaint itself [must] state[] that the plaintiff has failed to exhaust [his] administrative remedies." *Mackinac Tribe v. Jewell,* 87 F. Supp. 3d 127, 138 (D.D.C. 2015).

The Court will dismiss these claims because Johnson's complaint makes clear he has not exhausted his administrative remedies for them. Johnson used the Court's standard pro se form for employment-discrimination cases, which contains an "Exhaustion of Federal Administrative Remedies" section. Am. Compl. at 12. It asked when Johnson "filed a charge with the [EEOC] or [his EEO] counselor regarding the . . . alleged discriminatory conduct," and he answered "N/A." *Id.* It also required him to indicate whether the EEOC "issued a Notice of Right to Sue letter," and if so, when. Johnson left those boxes unchecked. *Id.* And it required him to "answer" whether "more" or "less than 60 days" had elapsed "[s]ince filing [any] charge of age discrimination" with the EEOC; but again, Johnson said nothing. *Id.* And Johnson removed whatever doubt might remain about whether he availed himself of these administrative procedures in his later filings. He responded to Defendants' exhaustion argument by explaining that he was "free to pursue a new

---

[4] Generally, Title VII and the ADEA require a plaintiff to "fil[e] a charge of discrimination with the EEOC." *Peters v. District of Columbia*, 873 F. Supp. 2d 158, 180 (D.D.C. 2012). And Title VII requires the plaintiff to wait for a right-to-sue letter. *See Hunter v. Washington Metro. Area Transit Auth.*, No. 22-cv-3552 (CKK), 2025 WL 522052, at *3 (D.D.C. Feb. 18, 2025). The ADEA also permits an employee to "bring a claim directly to federal court so long as, within 180 days of the allegedly discriminatory act, he provides the EEOC with notice of his intent to sue at least 30 days before commencing suit." *Johnson v. Vilsack*, 815 F. Supp. 2d 221, 226 (D.D.C. 2011) (quoting *Rann v. Chao*, 346 F.3d 192, 195 (D.C. Cir. 2003)); 29 U.S.C. §§ 633a(c), (d).

case if [he] so wished, and [he] did" after he was told his 1994 case was "already well done and closed." ECF No. 34 at 18. Doubling down, he contended that he "could choose to opt out/go directly to the federal courthouse for relief" because "America is a free country." *Id.* at 25. But unfortunately for Johnson, that he has no "faith" in "the EEOC," "only in the judge," does not excuse his non-compliance. *Id.* at 21.

To be sure, Johnson could have directly filed his ADEA claims in federal court had he sued "within 180 days of the allegedly discriminatory act" and notified the EEOC. *Rann v. Chao*, 346 F.3d 192, 195 (D.C. Cir. 2003); 29 U.S.C. § 633a(c), (d). But if Johnson chose the ADEA's alternative path to judicial review, the complaint makes clear that any claim would be time-barred, as none of the alleged events occurred within 180 days of him suing. The last incident alleged in the complaint happened in November 2021, when EPA fired him. Am. Compl. at 21. But more than two years passed until Johnson sued, so any ADEA claim would be untimely had he chosen that route. *See* ECF No. 1; *Bain*, 648 F. Supp. 3d at 49 (dismissing ADEA claims in part as untimely because none "of these incidents occur[red] 180 days or less before [the plaintiff] filed this lawsuit").[5]

## IV.   Conclusion

For all these reasons, the Court will grant Defendants' motion to dismiss. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: May 23, 2025

---

[5] Even if Johnson's complaint is construed as also raising a disability discrimination claim under § 501 of the Rehabilitation Act, it would be subject to dismissal for lack of subject-matter jurisdiction too. A plaintiff must also exhaust his administrative remedies before suing under that statute but, unlike in the Title VII and ADEA context, failure to exhaust a Rehabilitation Act claim *is* a jurisdictional defect. *Doak v. Johnson*, 798 F.3d 1096, 1103–04 (D.C. Cir. 2015).